UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL W. KUZMA,

                Petitioner,

v.

SHERMAN CAMPBELL,

                Respondent.

_____/

Case No. 1:15-cv-1130

Honorable Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Michael W. Kuzma is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Saginaw County, Michigan.  On May 18, 2012, following a three-day trial and a day of deliberation, a Calhoun County Circuit Court jury found Petitioner guilty of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b; third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d; and sexual penetration with an uninformed partner, in violation of Mich. Comp. Laws § 333.5210.  On June 21, 2012, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 35 years, 7 months to 60 years for CSC-I; 20 to 30 years for CSC-III; and 3 years, 9 months to 7 years, 6 months for sexual penetration with an uninformed partner.[1]

_____

[1] As of December 15, 2018, Petitioner had served the entire sentence for sexual penetration with an uninformed partner.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=219288 (visited May 15, 2020).

On November 2, 2015, Petitioner filed his initial habeas corpus petition.  He has since amended that petition to include the following six grounds for relief:

I.     The deprivation of Petitioner's Sixth Amendment right to counsel of his choice entitles him to habeas relief.

II.    Petitioner was denied his Sixth and Fourteenth Amendment right to counsel where his trial lawyer was (a) absent at a critical stage of the criminal process and (b) failed to subject the prosecution's case to meaningful adversarial testing.

III.    Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where his trial lawyer performed deficiently by (a) stipulating to important elements of the crime charged, (b) failing to investigate and call witnesses testify on Petitioner's behalf, and (c) the cumulative effect of these errors prejudiced Petitioner.

IV.    Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of appellate counsel where arguments II and III were not raised on direct appeal and appellate counsel failed to investigate and interview known defense witnesses establishing the "good cause" required by MCR 6.508(D)(3)(a).

V.    Petitioner's claim that his Sixth and Fourteenth Amendment right to effective assistance of counsel is not procedurally defaulted where Petitioner demonstrated cause for the default and actual prejudice and/or failure to consider the claim would result in a miscarriage of justice.

VI.    The prosecutor's failure to provide Petitioner with informant's arrest and parole history and complainant's criminal history of similar acts violated his state and federal constitutional rights to due process and a fair trial.

(Pet'r's Reply Br., ECF No. 32, PageID.1981.)  Respondent has filed an answer to the petition (ECF No. 23) stating that the grounds should be denied because they are procedurally defaulted or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds lack sufficient merit to warrant habeas relief.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

The Michigan Court of Appeals recounted the facts underlying Petitioner's convictions as follows:

> The instant charges arise from a camping trip that defendant and complainant, then a 15-year-old boy, took on August 7, 2010. A few days earlier, defendant had hired the complainant to work for his moving company. Defendant subsequently invited the complainant to go camping with him after work. According to complainant's trial testimony, they both slept in the back of defendant's vehicle and during the night defendant anally penetrated him for a period of approximately 30 seconds. Defendant testified that he and the complainant went camping together, but denied that he and the complainant slept together in his vehicle or had any sexual contact. The parties stipulated that defendant had contracted HIV in 1994 and was diagnosed with AIDS in 2009. The complainant testified that he was unaware that defendant was HIV-positive at the time of the alleged penetration.

(Mich. Ct. App. Op., ECF No. 24-20, PageID.1262.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Although Petitioner maintains his innocence, he does not deny that the complainant's testimony was exactly as the court of appeals described it, and his habeas challenges do not contend that the state appellate court unreasonably determined the facts described above.

The jurors heard testimony from the victim, his mother, two law enforcement officers who investigated the victim's claims, a sexual assault nurse examiner, a jailhouse informant, a physician's assistant who examined the victim, a co-worker, a psychologist, and a person whom Petitioner had sexually assaulted many years before. Petitioner also offered the testimony of several witnesses: another co-worker, a business owner who shared office space with Petitioner, Petitioner's brother, and Petitioner. After hearing the testimony, closing arguments, and instructions, the jurors deliberated for about one day before reaching their verdict.

Petitioner appealed his convictions to the Michigan Court of Appeals.  In the brief Petitioner filed with the assistance of counsel, he raised two issues.  (Pet'r's Appeal Br., ECF No. 24-20, PageID.1357.)  Petitioner raised four additional issues in a *pro per* supplemental brief.  (Pet'r's Suppl. Appeal Br., ECF No. 24-20, PageID.1395.)   By unpublished opinion issued February 25, 2014, the Michigan Court of Appeals agreed with Petitioner that the trial court should not have compelled Petitioner to go forward with his sentencing represented by retained counsel whom Petitioner had fired.  (Mich. Ct. App. Op., ECF No. 24-20, PageID.1262-1272.)  The appellate court vacated Petitioner's sentences and remanded the case to the trial court for resentencing.  With respect to all other issues, however, the court of appeals denied relief.

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court, raising the same issues he had raised in the Michigan Court of Appeals and one new claim of ineffective assistance of counsel, regarding counsel's failure to investigate, interview, and present expert testimony to do the following:  (1) counter the prosecution's expert regarding the behavior of a minor following sexual assault; and (2) inform the jury that Petitioner's viral load was so high that he could not have likely engaged in anal penetration without infecting his partner—the victim tested negative.   (Pet'r's Appl. for Leave to Appeal, ECF No. 24-21, PageID.1479, 1590.)  By order entered September 29, 2014, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 24-21, PageID.1477.)

Pursuant to the Michigan Court of Appeals order of remand, the trial court resentenced Petitioner on November 17, 2014, to the same sentences that it previously had imposed.  (Sentencing Hr'g Tr., ECF No. 24-12, PageID.1123-1124.)

Petitioner did not appeal his new sentence.  Instead, he timely filed his initial habeas petition, raising three issues.  (Pet'r's Br., ECF No. 2, PageID.6.)  The Court ordered Respondent

to answer the petition; but, before the answer was due, Petitioner filed a motion for relief from judgment in the state trial court (ECF No. 24-13), and, in this Court, he filed a motion to stay the petition and hold the habeas proceedings in abeyance while he exhausted his state court remedies with regard to new issues (ECF No. 8).  The Court stayed these proceedings.  (Op. and Order, ECF Nos. 10, 11.)

The trial court denied Petitioner's motion for relief from judgment.  (Calhoun Cnty. Cir. Ct. Order, ECF No. 24-16, PageID.1236.)  Petitioner sought leave to appeal that order in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered September 18, 2017, and November 7, 2018, respectively.  (Mich. Ct. App. Order, ECF No. 24-22, PageID.1603; Mich. Order, ECF No. 24-23, PageID.1751.)[2]  Petitioner then returned to this Court and filed his amended petition.  The amended petition raises the six issues identified above.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an

---

[2] While Petitioner's application for leave to appeal was pending in the Michigan Court of Appeals, he filed a motion to amend his first motion for relief from judgment (ECF No. 24-17), and then a new motion for relief from judgment (ECF No. 24-18), in the trial court.  It appears that the trial court denied Petitioner's motion for relief on November 29, 2017, (Calhoun Cnty. Cir. Ct. Order, ECF No. 24-24, PageID.1951) and then again on January 23, 2018, (Calhoun Cnty. Cir. Ct. Order, ECF No. 24-19).  Petitioner sought leave to appeal the denial, but the Michigan Court of Appeals dismissed the application because there is no appeal from an order denying a successive motion for relief from judgment.  (Mich. Ct. App. Order, ECF No. 24-24, PageID.1912.)

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575

U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Counsel of choice

Petitioner claims that he was not permitted to retain the counsel of his choice.  The Michigan Court of Appeals described the circumstances as follows:

> Defendant retained counsel of his choice more than a year before trial began on May 15, 2012.  On the first day of trial, defendant informed the trial court for the first time that he wished to retain a different attorney, citing dissatisfaction with his current counsel's pretrial investigation and preparation.  Defendant stated that he had had contact with two potential attorneys and requested an adjournment in order to retain one of them.  The trial court denied defendant's request, noting that the parties received notice of the trial date on March 6, 2012–more than two months in advance of trial–and that the jurors were assembled and the parties were prepared to proceed that day.

(Mich. Ct. App. Op., ECF No. 24-20, PageID.1263.)  The Michigan Court of Appeals description of the underlying facts is reasonable.  Petitioner presented his request for new counsel as follows:

> MR. MOORE:          Yes, Your Honor.  I spoke with my client who was brought
>                    over from a prison in Jackson this morning.  He's indicated
>                    that he and some of his friends are in the process of looking

for different counsel.  He told me that he does not believe that I'm ready.  He said that he doesn't get along with me and that he wants a different attorney.

I did speak with two--two of his friends outside the courtroom today who said they're in the process of obtaining funds or gathering funds to get an attorney.  Mister told me--Mr. Kuzma told me he has two attorneys in mind.

THE COURT:      All right.  And--well, anything you want to add Mr. Kuzma?

MR. KUZMA:      Yes, Your Honor.  If I may, please.  Thank you.

Actually, to clarify about Mr. Moore's information, we actually have two--or two attorneys.  One is Douglas Mulkhoff from Ann Arbor, and the other is the Law Offices of Shane and Smith out of Detroit.

We actually do have the funds, so this is not tentative.  These--one of these--one of these attorneys will be hired in regards to asking for adjournment and so that we can--so we can complete this transaction.

In--in support of that, I mean it—it's our personal belief that we've dealt with mister--with Mr. Moore for a little over a year on this and we went through his private investigator.  There is still a lot of evidence out there that needs to be gathered that is--that will exonerate me on this and that's without question.

There's--there's witnesses that need to called that need to be put on the witness list that are not there that have not been talked to.    Mr. Moore's office has actually just now contacted my--my--my witnesses, only a couple of them just yesterday.

THE COURT:      All right.

MR. KUZMA:      And this has been going on for a year--to contact my witnesses.

And furthermore, I understand that I had asked him a hundred-and-eighty day rule--ruling be filed.  I request a dismissal of these charges because it's currently now 210 days.

8

| THE COURT: | Well, I'll—I'm going to shut you down right now, quite frankly, because that 180 Day Rule, you're not the lawyer . . . |
|---|---|
| MR. KUZMA: | Yeah. |
| THE COURT: | You're not a lawyer. |
| MR. KUZMA: | I understand. |
| THE COURT: | I can tell you as a Judge it wasn't even a close call.  The Michigan Supreme Court has addressed the 180 day issue; it's not a firm 180 days.  It's been--it was placed on the record yesterday, as I said, from my perspective it wasn't even a close call.[3]  You are not entitled to a dismissal of this case with prejudice based on what's been presented.<br><br>Here's the situation.  We've got a panel--two panels of jurors sitting outside here right now . . . |
| MR. KUZMA: | Uh-huh, |
| THE COURT: | . . . completing orientation to begin this trial.  This is--this trial was set back on March 6th for today. |
| MR. KUZMA: | Uh-huh. |
| THE COURT: | And it's—we're ready to go today and we are going to proceed today as is.  You have one attorney, that's Mr. Moore.  We're going to proceed with trial. |

(Trial Tr. I, ECF No. 24-6, PageID.550-553.)

The Michigan Court of Appeals resolved Petitioner's challenge as follows:

The erroneous deprivation of a defendant's right to retain counsel of his choice is a structural error requiring reversal without a showing of prejudice.  *United States v Gonzalez-Lopez*, 548 US 140, 148-150; 126 S Ct 2557; 165 L Ed 2d 409 (2006); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009).  In *Gonzalez-Lopez*, 548 US at 146, the United States Supreme Court explained that the Sixth Amendment "commands . . . that the accused be defended by the counsel he believes to be the best."  See also *Aceval*, 282 Mich App at 386.  However, the Court noted that a defendant's right to counsel of choice must be "balance[ed]

---

[3] Petitioner's counsel presented a motion to dismiss pursuant to the 180-day rule the day before trial.  (Mot. Hr'g Tr., ECF No. 24-5, PageID.526-534.)

against the needs of fairness, and against the demands of its calendar[.]"  548 US at 152 (citations omitted).

In *Morris v Slappy*, 461 US 1, 11-12; 103 S Ct 1610; 75 L Ed 2d 610 (1983), the Supreme Court stated:

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.  Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

> Similarly, we have stated, "the right to counsel of choice is not absolute.  A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated."  *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003) (quotation marks and citations omitted).

> In light of these standards and the procedural history of this case, we conclude that the trial court did not abuse its discretion by declining to adjourn the trial on the day it was to begin in order to allow defendant to attempt to retain different counsel.  See *People v Weddell*, 485 Mich 942, 944; 774 NW2d 509 (2009); *People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011) (holding that a substitution of counsel "would have unreasonably delayed the judicial process" where the defendant "waited until the day of trial to request new counsel[,]" [t]he jury and witnesses were present, and the prosecutor and defense counsel were ready to proceed").

(Mich. Ct. App. Op., ECF No. 24-20, PageID.1263-1264.)    The appellate court's analysis expressly relies upon and is consistent with clearly established federal law and Sixth Circuit authority regarding substitution of retained counsel.

"In all criminal prosecutions," the Sixth Amendment says, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI.  That includes the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quotation omitted).  Deprivation of the right is

complete when a defendant is erroneously denied counsel of choice; he need not show prejudice or demonstrate that the counsel he received was ineffective. *Id*. at 148. However, "the right to counsel of choice 'is circumscribed in several important respects.'" *Id.* at 144 (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)). One of those respects is that trial courts retain "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Id*. at 152 (citation omitted). Nevertheless, "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Recognizing this "wide latitude in balancing," *Gonzalez-Lopez*, 548 U.S. at 152, the Supreme Court as concluded that, to warrant a substitution of counsel during trial, the defendant "'must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [the] attorney . . . .'" *United States v. Sullivan*, "431 F3d 976, 979-80 (6th Cir. 2005) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)). The Supreme Court has recognized that "courts addressing substitution motions in both capital and non-capital cases routinely consider issues of timeliness." *Martel v. Clair*, 565 U.S. 648, 662 (2012). And, the Sixth Circuit, when reviewing a trial court's denial of a motion to substitute counsel, considers timeliness as one of four factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)).

11

Petitioner argues that the court of appeals' resolution of the issue is contrary to *Gonzalez-Lopez*.  But *Gonzalez-Lopez* states clearly that it "is not a case about a court's power to . . . make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Gonzalez-Lopez*, 548 U.S. at 152.  Petitioner has not and cannot cite any Supreme Court authority holding that a trial court's discretionary denial of a request for new counsel on the day of trial violates Petitioner's constitutional right to counsel of his choice.[4]

When "'the granting of the defendant's request [to substitute counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008).  The more general the rule, and the broader the discretion afforded to the trial court, "'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The trial court's exercise of its discretion to deny Petitioner's motion to substitute counsel—and a continuance—was not unreasonable.  Petitioner's complaints about his counsel did not evidence a conflict of interest for his counsel, a complete breakdown of communication, or an irreconcilable conflict between Petitioner and his counsel.

Petitioner now attempts to squeeze his complaints into at least one of those three categories. He argues that trial counsel "had a preconceived belief of Petitioner's guilt to the charges that created a constant conflict of interest between attorney and client . . . ." (Pet'r's Br in Support of

---

[4] Indeed, the Sixth Circuit Court of Appeals has routinely indicated that the denial of such a motion on the day of trial is appropriate on timeliness grounds.  *See, e.g., Gilkey v. Burton,* No. 18-1760, 2019 WL 2970841, at *3 (6th Cir. Mar. 22, 2019); *McGhee v. MacLaren*, No. 17-1708, 2018 WL 3120798, at *2 (6th Cir. Jan. 19, 2018); *Mullins v. McKee*, No. 17-1845, 2018 WL 510134, at *2 (6th Cir. Jan. 3, 2018); *Nelson v. Jackson*, No. 16-2623, 2017 WL 5624278, at *3 (6th Cir. Jul. 17, 2017); *United States v. Jackson*, 662 F. App'x 416, 422-23 (6th Cir. 2016).

12

Am. Pet., ECF No. 15, PageID.158.)  He claims he "attempted to inform [the court about] the conflict of interest and the complete breakdown of attorney-client relationship . . . ."  (*Id.*, PageID.160.)  Petitioner contends that the court shut him down.  (*Id.*, PageID.151) ("I'm going to shut you down right now . . .").  That contention is misleading.  The court did not preclude Petitioner from discussing his dissatisfaction with counsel.  The court shut Petitioner down with regard to re-raising a motion to dismiss under the 180-day rule that the court had considered and rejected the day before.  But notwithstanding Petitioner's present arguments, the issues as Petitioner presented them to the trial court did not, on their face, demonstrate the type of problems with counsel that necessarily warrant a substitution of counsel on the first day of trial.  The trial court's decision denying Petitioner's motion to substitute counsel and the court of appeal's affirmance of that decision, therefore, fall within the broad discretion afforded state courts in deciding such last-minute motions.

Petitioner has failed to demonstrate that the Michigan Court of Appeals rejection of his claim that he was denied counsel of his choice is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV.    *Brady* violation

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

13

Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).  "There is no Brady violation where information is available to the defense because in such cases there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

Petitioner alleges two distinct, but similar, *Brady* violations.  First, Petitioner alleges that the prosecutor failed to disclose the extent of the jailhouse informant's criminal history.  Indeed, Petitioner contends that the prosecutor specifically misrepresented that none of the prosecution witnesses—including jailhouse informant Scott Mihelsic—had any criminal convictions.  (Answer to Def. Disclosure Demand, ECF No. 15-1, PageID.274-276.)  Second, Petitioner contends that the prosecutor failed to disclose an ongoing investigation of the victim for criminal sexual conduct against a young girl.

14

### A.  The jailhouse informant's criminal history

The Michigan Court of Appeals addressed Petitioner's first *Brady* challenge as follows:

Defendant argues that he is entitled to new trial because the prosecution committed a *Brady* violation by not disclosing evidence of the informant-witness's criminal and parole records.  Defendant has provided this Court with evidence that the informant was convicted of CSC III, had been charged with, or at least accused of, filing a false police report, and had made false statements to his parole officer.

> A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt.  In order to establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). (citations omitted).]

Prior to trial, the prosecution filed an answer to defendant's disclosure requests and a witness list.  The witness list included the informant's name.  The same document stated that, "The People know of no criminal convictions of any witness whom the People may call at trial."  Evidence of the informant's criminal convictions and parole violations was obviously favorable to defendant's case, and this Court has held that impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule.  *People v Lester*, 232 Mich App 262, 280-281; 591 NW2d 267 (1998).

For purposes of this analysis, we will assume that the prosecution both possessed and suppressed the impeachment evidence, thus satisfying elements (1) and (3) of the above test.  *Cox*, 268 Mich App at 448.  Nonetheless, defendant is not entitled to relief.  First, the informant's conviction for CSC III is easily accessible via Michigan's Offender Tracking Information System (OTIS) online database.  Defense counsel could have obtained that information with minimal reasonable diligence.  Armed with evidence of the informant's conviction, counsel could have then presumably obtained the informant's more detailed arrest and parole records.  Thus, defendant cannot establish element (2) of a *Brady* violation.

Second, defendant cannot show that, had the informant's criminal and parole records been disclosed, that there is a reasonable probability that the outcome of his trial would have been different.  To require reversal, the impeachment evidence must have been "material."  *Lester*, 232 Mich App at 281-282.  "In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant to the crime or where the likely effect on the witness' credibility would have undermined a critical element of the

prosecutor's case." *Id*. at 282.  In this case, the complainant's testimony, coupled with defendant's stipulations, established the necessary elements of the charged crimes.  A reasonable jury could have found defendant guilty without the benefit of the informant's testimony and, thus, the testimony was not a critical element of the prosecution's case.   Moreover, defense counsel elicited testimony that the informant was a convicted sex offender with the motive and means to falsify his story regarding defendant's jailhouse confession.  And, "a new trial is generally not required . . . where the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already shown to be questionable." *Id*.  Thus, defendant also cannot establish[] element (4) of a *Brady* violation and, therefore, is not entitled to relief on that basis.  *Cox*, 268 Mich App at 448.

(Mich. Ct. App. Op., ECF No. 24-10, PageID.1268-1269) (footnotes omitted).

Petitioner takes issue with the state court's determination of this *Brady* claim for several reasons.  First, Petitioner claims that the state court has grafted on to the *Brady* analysis a new requirement of due diligence.  In *Banks v. Dretke*, 540 U.S. 668 (2004), the Supreme Court considered and rejected the Fifth Circuit's use of a due diligence requirement to dismiss the defendant's *Brady* claim.  The Sixth Circuit has relied on *Banks* to reject a due diligence rule, *see United States v. Tavera*, 719 F.3d 705, 710-712 (6th Cir. 2013), at least where the records at issue are not publicly available, *Id*. at 712 n.4.  The *Tavera* court indicated, however, that, where the records are publicly available, the holding of *Bell*, still applies:  "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell*, 512 F.3d at 235 (internal quotations omitted).  So, whether or not the state court's determination of the issue is "contrary to" clearly established federal law depends on whether one construes the resolution as imposing a due diligence requirement or simply acknowledging that the prosecutor really cannot "fail" to disclose documents that are publicly available.

The undersigned need not construe the state appellate court's opinion one way or the other to resolve Petitioner's *Brady* claim because the state court did not rest its determination on that issue alone.  Rather, the court of appeals went on to find that Petitioner had failed to demonstrate

16

prejudice.  The court found that the prosecutor's failure to produce the jailhouse informant's criminal and probation history was not "prejudicial" in the *Brady* sense because defense counsel was able to impeach the informant with the disclosure that the informant was a convicted sex offender who had the motive and opportunity to falsify his testimony to seek a benefit for himself. The additional information Petitioner suggests that might have come in to impeach the informant were old convictions for writing bad checks and larceny as well as a more recent and rather fantastic lie to police and probation officers to the effect that he had been kidnapped and forced to imbibe substances—a lie offered to explain the probation violation that led to the informant being jailed in the same cell with Petitioner.  (Pet'r's Mot. for Relief from J. Appendix K, ECF No. 24-13, PageID.1204-1218.)

Petitioner claims the absence of this additional impeachment evidence was obviously prejudicial.  The court of appeals concluded it was not because there was other compelling impeachment evidence introduced.  "Evidence that is 'merely cumulative' to evidence presented at trial is 'not material for purposes of *Brady* analysis'"  *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010); *see also Robinson v. Mills*, 592 F.3d 730, 736 (6th Cir. 2009) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.")  The *Brooks* case is particularly instructive because it also involved a purported failure of the prosecutor to turn over additional impeachment evidence regarding a jailhouse informant.  The *Brooks* court stated:

> The Supreme Court "has long recognized the serious questions of credibility informers pose." *Banks v. Dretke*, 540 U.S. 668, 701 (2004) (citation and internal quotation marks omitted).  This court has similarly concluded that an informant-witness is sufficiently impeached, rendering the undisclosed impeachment

17

materials nonmaterial, where "[t]he jury was apprised of [the informant's] status and the possible other reasons for his decision to testify, namely, that he wished to secure early parole as a result of his participation in the [defendant's] case." *Bell v. Bell*, 512 F.3d 223, 237 (6th Cir.2008) (en banc).

As was the case in *Bell v. Bell*, the disclosure of the additional Nelson impeachment materials in the present case "would not have permitted the development of alternate theories or different lines of argument." *See id.* Nelson's credibility was effectively impeached at trial. Evidence of his history of mental illness would have provided additional reasons not to credit his testimony, but would have been cumulative to the evidence already in the record. Moreover, under Tennessee evidentiary law, Nelson's convictions for perjury and forgery were presumptively inadmissible due to the fact that they were over 15-years-old at the time of Brooks's August 1996 trial. *See* Tenn. R. Evid. 609(b). We therefore conclude that, although this issue is uncomfortably close to the constitutional line, the undisclosed evidence was not material under *Brady*.

*Brooks*, 626 F.3d at 893-94; *see also Montgomery v. Bobby*, 654 F.3d 668, 681-82 (6th Cir. 2011) (citing *Brooks* and *Bell*).

Here, as in *Brooks*, the withheld information was cumulative to the strong impeachment evidence introduced at trial. The evidence of prior convictions should have been disclosed—and it may have been. Petitioner attached to his briefs in the Michigan appellate courts and to his brief in this Court his trial counsel's answers to interrogatories. In those answers, counsel reports: "The prosecuting attorney's office sent me [Mihelsic's] criminal record and I performed a records check through the Michigan State Police." (Interrogatory Responses, ECF No. 15-1, PageID.235.) Additionally, that the informant had previously lied to police should have been disclosed if the prosecutor had those reports.[5] The informant's facile lies are revealing and bring the issue "uncomfortably close to the line." Nonetheless, defense counsel explored with the informant at some length the reasons he may have had to fabricate his testimony against Petitioner. Under the

---

[5] Counsel's responses to Petitioner's interrogatories suggest that reports from the Michigan Department of Corrections parole officer regarding Mihelsic's claim of a kidnapping and forced drug use were not provided to counsel. (Interrogatory Responses, ECF No. 15-1, PageID.235-236.) The record is silent, however, as to whether the prosecutor possessed these reports.

circumstances, therefore, the court of appeals reasonably concluded that the cumulative impeachment information was not material under *Brady*. The court of appeals' determination is neither contrary to, nor an unreasonable application of, clearly established federal law. As a result, Petitioner is not entitled to habeas relief on this *Brady* claim.

### B.  Criminal investigation of the victim

Petitioner contends the prosecutor should have disclosed the victim's juvenile record as well as the fact that, after the offense of which Petitioner was convicted, but before the trial, the victim was being investigated based on a report of criminal sexual conduct. (Pet'r's Am. Pet. Br. Exhibits, ECF No. 15-1, PageID.287, 311.) The Michigan Court of Appeals rejected Petitioner's second *Brady* claim as well. The appellate court's resolution depended on its analysis of Petitioner's claim that counsel was ineffective for failing to investigate and use the victim's juvenile record or the pending investigation of the victim at trial.

The court of appeals concluded that Petitioner's trial counsel was not ineffective for failing to investigate or use the information, as urged by Petitioner, because under state law neither the victim's juvenile record nor the investigation could have been admitted at trial. (Mich. Ct. App. Op., ECF No. 24-20, PageID.1267.) Because the information was not admissible for any purpose, the prosecutor's failure to disclose it "did not affect the outcome of defendant's trial . . . ." (*Id.*, PageID.1269, n.8.)

The court of appeals' determination that the information was not admissible under state law is conclusive. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Accordingly, the Michigan Court of Appeals determination that the evidence would have been inadmissible for any purpose binds this Court.

Because the evidence was inadmissible, Petitioner cannot demonstrate the prejudice necessary to establish a *Brady* claim.  Therefore, Petitioner has failed to demonstrate that the Michigan Court of Appeals' determination of his *Brady* claim is contrary to, or an unreasonable application of clearly established federal law, and he is not entitled to habeas relief.

## V.   Ineffective assistance of trial counsel

Petitioner contends his counsel rendered ineffective assistance in several respects.

### A.  Counsel failed to appear at a motion hearing

On April 23, 2012, the trial court conducted a hearing on the prosecutor's motion to compel production of medical records.  (Mot. Hr'g Tr., ECF No. 24-4.)  Petitioner's trial counsel did not appear for the hearing.  Petitioner contends that counsel's absence from the hearing was not only ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), but also the deprivation of counsel at a critical state of the proceedings under *United States v. Cronic*, 466 U.S. 648 (1984).

The record provides additional background that is helpful to resolution of Petitioner's claim.  To establish Petitioner's guilt on the charge of sexual penetration with an uninformed partner, the prosecutor was required to show that Petitioner had, and knew that he had, HIV or AIDS at the time of sexual penetration.  The prosecutor had identified witnesses who could testify that Petitioner had admitted those facts; but the prosecutor sought corroborating medical test results.  (Mot. Hr'g Tr., ECF No. 24-4, PageID.517-519.)  For that reason, the prosecutor

subpoenaed the county health department seeking evidence of Petitioner's HIV test results.  The

county health department did not object to the subpoena.  (*Id.*, PageID.516.)  Instead, a

representative of the health department contacted the prosecutor and informed him that the health

department would not respond to the subpoena until the prosecutor complied with Mich. Comp.

Laws § 333.5131.  That statutory section provides:

> (1)  All reports, records, and data pertaining to testing, care, treatment, reporting, and research, and information . . . that are associated with HIV infection and acquired immunodeficiency syndrome are confidential.  A person shall release reports, records, data, and information described in this subsection only pursuant to this section.

*    *    *

> (3)   The disclosure of information pertaining to HIV infection or acquired immunodeficiency syndrome in response to a court order and subpoena is limited to only the following cases and is subject to all of the following restrictions:

>> (a) A court that is petitioned for an order to disclose the information shall determine both of the following:

>>> (i)  That other ways of obtaining the information are not available or would not be effective.

>>> (ii)   That the public interest and need for the disclosure outweighs the potential for injury to the patient.

>> (b)  If a court issues an order for the disclosure of the information, the order must do all of the following:

>>> (i)  Limit disclosure to those parts of the patient's record that are determined by the court to be essential to fulfill the objective of the order.

>>> (ii)  Limit disclosure to those persons whose need for the information is the basis for the order.

>>> (iii)  Include other measures as considered necessary by the court to limit disclosure for the protection of the patient.

*Id*. If a person discloses the protected information other than as authorized by the statute, the person is guilty of a misdemeanor. *Id*. Undoubtedly for that reason, the county health department refused to respond to the subpoena until all the requirements of the statute had been satisfied. (Mot. Hr'g Tr., ECF No. 24-4, PageID.513, 520-521.)

Although the statute limiting disclosure of HIV and AIDS information protects the patient, the purpose of the hearing was to protect the county health department employees. The court indicated that the proper procedure would have been for the county health department to object to the subpoena, rather than making the prosecutor file a motion to compel. (*Id*., PageID.520-21.) Nonetheless, the court made the findings required by the statute, findings that had the effect of protecting Petitioner and the health department. To give Petitioner's counsel and the county health department an opportunity to object, the court directed the prosecutor to enter the order under the "seven-day" rule. Mich. Ct. R. 2.602(B)(3), made applicable by Mich. Ct. R. 6.001. No objections were filed. (Calhoun Cnty. Cir. Ct. Reg. of Actions, ECF No. 24-1, PageID.458.)

Based on subsequent events, it appears the health department provided records. Shortly before trial, the prosecutor amended his witness list to include a health department nurse and a records custodian. (Mot. Hr'g Tr., ECF No. 24-5.) Petitioner contends that the county health department did not possess any records; however, the record support for that contention is questionable.[6]

---

[6] Petitioner refers to counsel's interrogatory responses from a subsequent civil suit, but those responses do not support the contention. (Pet'r's Br. in Support of Am. Pet., ECF No. 15, PageID.166.) Petitioner also filed an affidavit claiming that he "reviewed the records from the Michigan Department of Health and they did not contain any information pertaining to [his] HIV/AIDS status prior to the date of the charged crimes . . . ." (Aff. of Michael Kuzma, ECF No. 24-13, PageID.1173.) It is not clear whether the records Petitioner references are the same records, if any, that were produced by the Calhoun County Health Department or how he was able to acquire and review them while incarcerated.

22

On the second day of trial, the parties stipulated to the following facts: "Michael Kuzma is diagnosed with the human immunodeficiency virus, HIV, infected in [19]94[; he]. . . was diagnosed with the autoimmune deficiency syndrome, which is AIDS, in 2009[; and he] . . . has been aware that he's been HIV positive and diagnosed in 1994, and AIDS, [for] which he got diagnosed in 2009."  (Trial Tr. III, ECF No. 24-8, PageID.801-802.)  Because of the stipulation, the prosecutor did not call records custodian Jody Ralph, nurse Caroline Wagner, Calhoun County Jail employee Eduardo Barroso, and Michigan Department of Corrections worker Donald Drum.[7]  (*Id*.)

The standard to be applied to Petitioner's claim depends on whether it is properly considered a claim under *Strickland* or *Cronic*.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id*. at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  The defendant bears the burden of overcoming

---

[7] Drum and Barroso testified at Petitioner's preliminary examination that Petitioner had admitted to them his HIV/AIDS status.  (Prelim. Exam. Tr. II, ECF No. 24-3.)  Drum testified that Petitioner told Drum that Petitioner had contracted AIDS while getting some tattoos in 1994.  (*Id*., PageID.501.)  Barroso testified that Petitioner admitted he had AIDS when Barroso was booking Petitioner into the county jail during 2007.  (*Id*., PageID.504-506.)  It appears that witnesses Rolfe and Wagner would have testified regarding Petitioner's HIV/AIDS status, or documents pertaining to that status, after the incident in the campground.  (Mot. Hr'g Tr., ECF No. 24-5, PageID.536-537.)  Wagner drew Petitioner's blood, but also confronted Petitioner about not properly reporting his status on a questionnaire.  (*Id*.)  Wagner reported that Petitioner told her that counsel had told Petitioner to lie on the questionnaire.  (*Id*.)

the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

When a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In *Cronic*, 466 U.S. at 648, the Supreme Court held that the denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. In that circumstance, the court must reverse a criminal defendant's conviction "without any [specific] showing of prejudice [to defendant] when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Id.* at 659 n.25.  "In other

words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed."  *Mitchell v. Mason*, 325 F.3d 732, 740 (6th Cir. 2003).

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court defined the differences between claims governed by *Strickland* and claims governed by *Cronic*.  *See Henness*, 644 F.3d at 323-24 (citing *Bell*, 535 U.S. at 695-96); *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007); *Mitchell*, 325 F.3d at 742).  If a claim is governed by *Strickland*, a defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial (or caused him to plead guilty).  If a claim is governed by *Cronic*, on the other hand, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel.  *Mitchell*, 325 F.3d at 742 (citing *Bell*, 535 U.S. at 695); *see Woods*, 575 U.S. at 317-18 ("*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'").  Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage, resulting in the complete denial of counsel; (2) when counsel does not subject the prosecution's case to any meaningful adversarial testing; and (3) when counsel is placed in circumstances in which competent counsel very likely would be unable to render effective assistance. *Henness*, 644 F.3d at 323-324 (citing *Bell*, 535 U.S. at 695-96)); *see also Ivory*, 509 F.3d at 294; *Mitchell*, 325 F.3d at 742.

Petitioner contends that counsel's absence from the motion to compel hearing equates to the denial of counsel at a critical stage.  He has not cited any clearly established federal law to support that proposition.  In *McNeal v. Adams*, 623 F.3d 1283 (9th Cir. 2010), the Ninth Circuit Court of Appeals considered whether a hearing on the prosecutor's motion to compel Petitioner to provide a DNA sample was a "*Cronic* critical stage." *Id*. at 1289.  The court reasoned the hearing was not a critical stage:

Critical stages involve "significant consequences" to the defendant's case. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002). No such consequences are present in this case. Petitioner's counsel appeared subsequent to the hearing but before the DNA sample was collected, and could have objected at that time if she believed there was a basis for denying the motion. Counsel also had an opportunity to argue at the admissibility hearing that the DNA evidence should not be admitted at trial. Thus, a state court could reasonably conclude that the taking of DNA samples is similar to taking handwriting exemplars and obtaining other physical evidence such as "fingerprints, [a] blood sample, clothing, hair and the like," *United States v. Wade*, 388 U.S. 218, 227-28 (1967), which are subject to meaningful challenge through the adversary process, and thus not *Cronic* stages. *See United States v. Lewis*, 483 F.3d 871, 874 (8th Cir. 2007) (citing cases). Accordingly, the hearing involved no significant consequences to Petitioner's case . . . .

*McNeal*, 623 F.3d at 1288 (footnote and additional citation omitted). Moreover, the *McNeal* court recognized that the Supreme Court had not determined that such a hearing on a motion to compel was a critical stage. *Id*. Therefore, the court concluded that the state court decisions rejecting Petitioner's critical stage argument were not contrary to clearly established federal law and did not involve an unreasonable application of Supreme Court precedent. *Id*.

Although *McNeal* is not binding precedent, it is persuasive. Indeed, the motion to compel hearing in Petitioner's case appears to be even less "critical" than McNeal's hearing because, in Petitioner's case, the production was being compelled from a third party, and the statute limiting disclosure of the HIV/AIDS information already imposed protections for Petitioner. The only way Petitioner or his counsel could have prevented the production would be to show that the information was available somewhere else—a showing that would not have helped Petitioner at all. Additionally, Petitioner's counsel had the ability to object to the content of the order before it was entered and could also object to the admissibility of the evidence obtained. Therefore, Petitioner, like McNeal, had the same opportunity to employ the adversary process to meaningfully challenge the production and admission of the evidence even after the hearing.

The motion-to-compel hearing involved no significant consequence to Petitioner's case. Accordingly, it was not a critical stage protected by *Cronic*. Petitioner has failed to show that the

state appellate court's failure to apply *Cronic* or its decision to apply *Strickland* to resolve Petitioner's claim of ineffective assistance is contrary to, or an unreasonable application of, clearly established federal law.

The Michigan Court of Appeals cited state authorities when it rejected Petitioner's ineffective assistance claim, but it applied a standard that was functionally identical to the *Strickland* standard.  "'To establish ineffective assistance of counsel, the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.'"  (Mich. Ct. App. Op., ECF No. 24-20, PageID.1265.)  The appellate court rejected Petitioner's claim that counsel rendered ineffective assistance based on counsel's failure to participate in the motion to compel because Petitioner could not show prejudice:

> Defendant first asserts that his trial counsel was ineffective for failing to respond to the prosecution's motion to compel the Michigan Department of Health to produce defendant's medical records and for failing to appear at the concomitant April 23, 2012 motion hearing.  There is no arguable trial strategy sufficient to justify defense counsel's failure to respond to the prosecution's motion or appear at the hearing.  Accordingly, defense "counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms."  *Id*.  However, defendant cannot establish that but for counsel's error "that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different."  *Id*.  Defendant does not argue that his medical records were inadmissible or that the trial court's order to compel these medical records was improper.  Nor does he . . . specifically contend that, or explain how, counsel's response to the prosecution's motion or appearance at the April 23, 2012 motion hearing would have prevented the prosecution from obtaining defendant's medical records.  Moreover, at trial, the parties stipulated to the fact that defendant contracted HIV in 1994 and was diagnosed with HIV in 2009, and defendant testified that he had AIDS at the time of the August 2010 camping trip.  Accordingly, defendant is not entitled to relief on this basis.

(*Id*., PageID.1266.)

27

Petitioner does not even attempt to show that he was prejudiced by the production of documents from the county health department, in part because he claims there were no documents produced by the county health department and in part because he contends prejudice is not required under *Cronic*. Moreover, even if documents were produced by the county health department, Petitioner has not shown that counsel's presence at the hearing would have made a bit of difference in the outcome or that counsel's ability to protect Petitioner's interest by way of objections to the resulting order under the seven-day rule was inadequate. Therefore, Petitioner has certainly failed to demonstrate that the appellate court's determination that Petitioner was not prejudiced by counsel's absence from the hearing is contrary to, or an unreasonable application of, clearly established federal law.

### B.  Stipulating to Petitioner's HIV/AIDS status and his knowledge of that status

Petitioner also contends that his counsel rendered constitutionally ineffective assistance when counsel stipulated to the facts that Petitioner was HIV positive and then was diagnosed with AIDS and that Petitioner knew of his HIV/AIDS status when the incident occurred during the summer of 2010. The impact of establishing those facts was significant. The facts were necessary elements of the charge that Petitioner engaged in sexual penetration with an uninformed partner. That charge, in turn, was a necessary element of Petitioner's CSC-I charge under Mich. Comp. Laws § 750.520b(1)(c), which makes sexual penetration a first-degree crime where it occurs under circumstances involving the commission of any other felony—here, sexual penetration with an uninformed partner.

Petitioner raised this issue for the first time in his motion for relief from judgment. (Pet'r's Mot. for Relief from J., ECF No. 24-13, PageID.1140-1141.) At the hearing, the trial court ruled as follows:

> I'm going to deny your request for an evidentiary hearing and you've not met the appropriate standard for the Court to grant any relief in this matter.
>
> I understand and I should indicate that I had a civil case involving Mr. Kuzma where he in fact sued his trial attorney and I was the Judge that handled that. That case was ultimately dismissed for other procedural grounds. So I'm very familiar with the facts and procedures or process in this particular case. And I know he's unhappy. He's unhappy that he was convicted. He's unhappy that the Court of Appeals didn't overturn it. That doesn't give rise to a relief from judgment in this matter so the motion is denied.

(Mot. Hr'g Tr., ECF No. 24-15, PageID.1228.)   That decision was memorialized in an order stating: "[T]his Court, upon hearing oral arguments presented in open court and reviewing the Defendant's Motion for Relief from Judgment, and the People's answer to same, this Court finds as follows:  IT IS ORDERED AND ADJUDGED that the Defendant's Motion for Relief from Judgment is DENIED."  (Calhoun Cnty. Cir. Ct. Order, ECF No. 24-16, PageID.1236.)

Respondent invites the Court to construe the trial court's statements at the hearing and in the order as establishing that the trial court denied relief because Petitioner failed to overcome the limits of Michigan Court Rule 6.508(D)(3) which forbids relief from judgment if the motion alleges grounds that "could have been raised on appeal from the conviction and sentence" absent a demonstration of "good cause for failure to raise such grounds on appeal" and "actual prejudice" or a determination that "there is a significant possibility that the defendant is innocent of the crime."  (Respondent's Response, ECF No. 23, PageID.401-405.)  If the trial court denied relief on that ground, it would have given rise to a procedural default that would foreclose habeas relief unless Petitioner demonstrated cause for the default and prejudice or manifest injustice.

Recent Sixth Circuit authority holds that an order as scant and cryptic as the trial court's order here cannot give rise to a procedural default.  Where the state court has noted a defendant's possible violation of a procedural rule but does not expressly hold that the procedural rule applies, it does not constitute a procedural default. *Smith v. Cook*, 956 F.3d 377, 385 (6th Cir. 2020) (citing

*Clinkscale v. Carter*, 375 F.3d 430, 441-42 (6th Cir. 2004) ("Although the decision unquestionably mentions [the procedural rule] and its requirements, it also emphasizes and relies upon [the merits]. It is unclear on what ground, or grounds, the court's judgment rested.  Under these circumstances, we are unable to say that the Ohio Court of Appeals' decision 'clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)); *Sanders v. Cotton*, 398 F.3d 572, 579–80 (7th Cir. 2005) (finding no procedural default where state court noted that "if an issue was available on direct appeal but not litigated, it is [forfeited]," but then "immediately proceeded to address and decide the merits" without directly saying that forfeiture had occurred)).

In Petitioner's case, the prosecutor argued that relief on Petitioner's claims was barred under Mich. Ct. R. 6.508(D)(2) because he raised those arguments on direct appeal, and they were decided against him, or under Mich. Ct. R. 6.508(D)(3) because he failed to raise them on direct appeal.  The trial court, however, did not reference either basis in his order denying relief.  The trial court may have decided the claim under (D)(2), which would mean the issues were decided on the merits and would not give rise to a procedural default; or (D)(3), which would give rise to a procedural default; or the trial court may have simply leapt ahead to the merits of Petitioner's claim and denied them because they were not meritorious, which would also not give rise to a procedural default.  As Petitioner notes, "the trial court's denial . . . is ambiguous at best . . . ." (Pet'r's Reply Br., ECF No. 32, PageID.1998.)  Accordingly, the trial court's resolution of the motion for relief from judgment does not provide a sufficient foundation for applying the procedural default doctrine.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99.

Petitioner does not argue that the trial court decided the claim on procedural grounds, and there do

not appear to be state-law principles to the contrary.

As noted above, under *Strickland*, this Court must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

466 U.S. at 689.  It is Petitioner's burden to overcome that presumption.  *Id.*  Moreover, under

*Harrington*, Section 2254(d)'s deferential standard becomes "doubly" deferential.  *Harrington*,

562 U.S. at 105.  In those circumstances, the question before the habeas court is "whether there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson*,

687 F.3d at 740-41 (stating that the "Supreme Court has recently again underlined the difficulty

of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*,

562 U.S. at 102).

The "any reasonable argument" language from *Harrington* reflects the double deference

owed.  The *Harrington* court described what the habeas court should consider and what it should

not consider:

> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable. The question is whether there is any reasonable argument that counsel
> satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105.  In *Harrington*, the issue was whether counsel could have reasonably

decided to ***not*** consult a blood expert.  The *Harrington* court did not evaluate counsel's decision

based on the reasons offered by counsel.  Indeed, it does not appear that there was ever a hearing

that disclosed counsel's motivation for his decision.  Instead, the *Harrington* court considered the

reasonableness of the decision in the abstract.  That approach necessarily follows from *Strickland*'s

requirement that, to overcome the presumption of regularity, the defendant must show that the

challenged action **cannot** be considered sound trial strategy.  If the reviewing court can conceive of a sound strategy that includes the challenged action, the matter is resolved.

*Harrington* reversed a Ninth Circuit *en banc* decision.  The *Harrington* court criticized the Ninth Circuit for limiting its inquiry to counsel's actual thinking:

> The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking.  Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins, supra*, at 526–527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).  After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome.  *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.  466 U.S., at 688.

*Harrington*, 562 U.S. at 109-10.  Under that reasoning, unless Petitioner shows the conceivable reasonable professional justification for the challenged action was, in fact, not the reason for counsel's action, the habeas court does not need to inquire any further into counsel's actual reason for his or her action (or inaction).  Therefore, in Petitioner's case, it is not necessary to discern counsel's actual reason for stipulating to the HIV/AIDS status facts.[8]

---

[8] Even if Petitioner were entitled to an evidentiary hearing, the evidence from that hearing would not impact the Court's analysis of this issue.  But Petitioner is not entitled to a hearing.  Petitioner has made repeated requests in the state courts and in this Court for an evidentiary hearing regarding counsel's conduct.  Following enactment of the AEDPA, federal habeas courts have limited discretion to take new evidence in an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *see also Sheppard v. Badley*, 657 F.3d 338, 343 (6th Cir. 2011).  Moreover, where the issue was adjudicated on the merits in the state court proceedings, the Supreme Court has held that federal habeas corpus "review under § 2254(d)(1) is limited to the record that was before the state court . . . ." *Pinholster*, 563 U.S. at 181.  In such circumstances, a federal habeas court is barred from holding an evidentiary hearing. *Id.*

Thus, the Court is left to consider whether, on this record, there was a conceivable reasonable trial strategy for stipulating to the HIV/AIDS status facts. As a preliminary matter, it is utterly disingenuous for Petitioner to claim in the same petition that counsel was ineffective for stipulating to the facts that Petitioner had HIV/AIDS, and knew it, on the one hand, and that counsel was ineffective for not getting into evidence that Petitioner routinely told all of his employees—and in fact told the victim and his mother—about Petitioner's HIV/AIDS status, on the other hand.

Moreover, the undersigned can conceive of at least one strategic reason simply to stipulate that Petitioner had HIV/AIDS and knew it. The prosecutor was ready to call two witnesses who would testify that Petitioner told them, prior to August 10, that he had HIV and then full-blown AIDS. Petitioner could not avoid taking the stand. He had to testify to counter the victim's version of the events of August 10. Once on the stand, Petitioner could not avoid being asked if he had HIV or AIDS. To challenge the testimony of two more seemingly disinterested witnesses would simply introduce another credibility problem for the Petitioner, in a case where his credibility was crucial.[9]

---

[9] Alternatively, challenging the testimony of two more witnesses might have shifted the focus from the key credibility contest between the Petitioner and the victim. Perhaps contesting Petitioner's HIV/AIDS status and knowledge of that status might have provided the jurors a middle ground—they could have sided with the victim on the issue of penetration but with Petitioner on the issue of status and knowledge. But it would seem very unlikely that the jurors would side with the victim on the issue of penetration, but side with Petitioner with regard to his status and knowledge. Plus, Petitioner would still be sitting in prison for at least 20 years on the CSC-III conviction. For counsel to bet the entire defense on the credibility contest between the victim and Petitioner on the issue of penetration is a risky strategy, but it is not unreasonable. The Sixth Circuit considered a similar claim that an "all or nothing" strategy constituted ineffective assistance in *Kelly v. Lazaroff*, 846 F.3d 819 (6th Cir. 2017). The *Kelly* court conducted a *de novo* review of the objective reasonableness of counsel's decision to assess whether appellate counsel should have raised the issue. The court concluded that counsel's decision to pursue a "'high risk, high reward' . . . 'all or nothing' defense . . . did not fall below the bar of professionally competent assistance." *Kelly*, 846 F.3d at 830.

Moreover, counsel might have reasonably wanted the jury to hear Petitioner's explanation for the infection—a beating and rape in prison—to plant the seed that Petitioner would not risk a return to that environment by engaging in sexual activity with a minor or prey on a minor as Petitioner had been preyed upon in prison.

Counsel's actual motivation is not expressed in the record. But whatever reason counsel may have had for stipulating to Petitioner's HIV/AIDS status and Petitioner's knowledge of that status, there are apparent strategic reasons for doing so. Therefore, Petitioner has failed to show that counsel's decision could not be considered sound trial strategy and he has failed to show that the trial court's rejection of his claim is contrary to, or an unreasonable application of *Strickland*.

### C.    Meaningful adversarial testing

Petitioner raises two types of argument regarding his challenge that counsel failed to subject the prosecutor's case to meaningful adversarial testing. At least in part, Petitioner seems to challenge counsel's attempt to oppose the prosecution's case "at specific points." (Pet'r's Reply Br., ECF No. 32, PageID.1985.) Those challenges are governed by the standard set forth in *Strickland* and are discussed in the numbered points below.

In Petitioner's reply brief, however, Petitioner clarifies that his argument is not that counsel failed to oppose the prosecution at specific points, but that counsel failed to subject the prosecution's case to meaning adversarial testing in its entirety with regard to the charge that Petitioner engaged in penetration with an uninformed partner. (*Id.*) Petitioner contends that defense counsel's abject failure to defend against that charge is properly examined under the *Cronic* standard. The Court will address Petitioner's *Cronic* argument as a preface to the specific points discussed below.

The crux of Petitioner's *Cronic* argument is that counsel presented a defense with regard to penetration, but not with regard to the fact of Petitioner's HIV/AIDS status and knowledge or

the fact that Petitioner informed the victim and his mother of Petitioner's HIV/AIDS status. Petitioner claims that abandoning those issues meant that counsel simply ignored available defenses that might have permitted Petitioner to prevail as to the penetration-with-an-uninformed-partner and CSC-I counts.

Petitioner is simply wrong to suggest that counsel did not defend against all three charges alleged against Petitioner.  The "all or nothing" strategy of focusing on the fact of penetration, if successful, would have resulted in acquittal on all three charges.  Moreover, because an "all or nothing" strategy is, for the reasons stated above, a reasonable trial strategy in Petitioner's case, *Cronic*'s elimination of the prejudice element does not help Petitioner.  His claim fails at the first step of the *Strickland* analysis and the only step of the *Cronic* analysis:  counsel's conduct was not professionally unreasonable.

That leaves only Petitioner's claims that his counsel failed to subject the prosecution's case to meaningful adversarial testing at specific points.  Those points are considered below.

### 1.    The jailhouse informant

Petitioner contends not only that the prosecution violated his constitutional rights when it failed to produce the criminal records of the jailhouse informant; but also that his counsel violated Petitioner's constitutional rights when counsel failed to investigate the informant's criminal records and use them at trial.  The court of appeals' reasonable resolution of the prejudice issue regarding Petitioner's *Brady* claim necessarily forecloses a finding of prejudice regarding his ineffective assistance claim.  The test for prejudice in the ineffective-assistance context is derived from the *Brady* test for materiality.  *Strickland*, 466 U.S. at 694.  Thus, it is not surprising that the court of appeals found no prejudice resulted from counsel's failure to investigate or use the informant's criminal records.  As noted above, the court of appeals determination that Petitioner

suffered no prejudice is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2.    The victim's record

The court of appeals' determination that no prejudice resulted from the prosecutor's failure to disclose information regarding the victim's juvenile record or an investigation, because such evidence was inadmissible, likewise forecloses a determination that counsel's failure to obtain the information was prejudicial.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 3.    The other employees

Petitioner also complains that his counsel failed to properly investigate several witnesses— other employees or relatives of Petitioner.  Petitioner offered a list of such witnesses in his *pro per* appeal brief on direct appeal.  (Pet'r's Pro Per Appeal Br., ECF No. 24-20, PageID.1422-1432.) Those witnesses included Matthew Flowers, David Kuzma, Gilbert Ortiz, Tammy Jaques, Mary Lynn Falbe, and Ronald Kuzma.  (Pet'r's Reply Br., ECF No. 32, PageID.1989.)  Petitioner has abandoned those claims in his habeas petition in favor of a new claim that he raises in his motion for relief from judgment—trial counsel failed to investigate, interview, and call Isaac Miller.  (*Id.*)

Petitioner did not discover that claim until his new counsel found Isaac Miller and secured his affidavit.  The affidavit Petitioner submits here is dated December 23, 2015 (Aff. of Isaac Miller, ECF No. 15-1, PageID.219-221); however, he submitted a virtually identical affidavit in the state trial court dated January 10, 2014 (Aff. of Isaac Miller, ECF No. 24-13, PageID.1182-1183).

The creation of the second affidavit is of some significance because Petitioner claimed that he had only recently discovered the information on December 23, 2015, when he filed his motion for relief from judgment in the trial court and then moved to stay these proceedings.  (Pet'r's Mot. to Stay, ECF No. 8, PageID.57.)  Petitioner was fully aware of the information before the court of

appeals issued its opinion on direct appeal.  He was fully aware of the information when he filed

his initial petition.  Petitioner's lack of candor is notable; it suggests a willingness to say whatever

is expedient.  That willingness is also apparent in Petitioner's affidavit.  Petitioner avers:

> On 08/11/2010, after reviewing the company application of Mr. Wilson and
> learning Mr. Wilson falsified information and failed to disclose criminal
> convictions of a sexually assaultive nature, I sent Mr. Wilson an instant message
> informing him he would no longer be scheduled for work.

(Pet'r's Aff., ECF No. 15-1, PageID.335.)  That representation is entirely inconsistent with the

affidavit of Mindy Culp, the office manager (Aff. of Mindy Culp, ECF No. 24-13, PageID.1165-

1166), and it is inconsistent with Petitioner's own testimony.  Perhaps most importantly,

Petitioner's affidavit claims he fired Mr. Wilson because Mr. Wilson failed to disclose facts that

Petitioner did not know about until years after Mr. Wilson was fired.  It is against that backdrop

that the Court considers the significance of Mr. Miller's affidavit.

Mr. Miller's affidavit is striking in that it demonstrates an ability to recall minute details

of seemingly insignificant meetings, conversations, and events more than five years after the fact.

There are two key facts in Mr. Miller's affidavit that did not otherwise come out at trial.  First, that

on August 7, 2010, Mr. Miller heard Petitioner inform the victim and his mother that he was HIV

positive.  (Aff. of Isaac Miller, ECF No. 15-1, PageID.221.)  Second, that on August 9, 2011, the

victim told Mr. Miller that if Petitioner fired him, "he would put criminal charges on [Petitioner]

and claim [that Petitioner] 'raped him'" and the victim told Mr. Miller that "he knew how to do

it."  (*Id.*, PageID.220.)

With regard to the claim that Petitioner informed the victim and his mother about his HIV

status, there were several persons purportedly present: Tammy Jaques, Angie Kuzma, Matt

Flowers, Dave Kuzma, Kevin Kerchoffer, Petitioner, the victim, and the victim's mother.  Of the

nine people there, including Mr. Miller, six testified.  None of them testified that Petitioner

informed the victim and the victim's mother of Petitioner's HIV status—not even Petitioner.  At the trial, Petitioner struggled to identify who was and was not there when he spoke with the victim and his mother on the morning of August 7, 2010.  (Trial Tr. IV, ECF No. 24-9, PageID.962-966.) Petitioner testified that he told them he was a convicted sex offender, but he did not testify that he told them he was HIV positive.  (*Id.*)  David Kuzma's recollection of that morning was particularly fuzzy.[10]  (*Id.*, PageID.946-949.)  Matthew Flowers did not identify David Kuzma as being present. (Trial Tr. III, ECF No. 24-8, PageID.910-911.)  He remembered that Petitioner told the victim and his mother that Petitioner was a convicted sex offender,[11] but Mr. Flowers did not say anything about HIV status.  Tammy Jaques, similarly, said nothing about such a disclosure.  The victim and his mother did not report such a disclosure either.

Mr. Miller's second revelation, regarding the victim's threat, was not witnessed by anyone else.  Nonetheless, the victim conveniently voiced the same threat, almost word for word, by way of an instant message to Petitioner on the night of August 11, 2010.  David Kuzma claims he witnessed that threat.  (Aff. of David Kuzma, ECF No. 15-1, PageID.223.)

Petitioner raised the issue regarding counsel's failure to investigate and obtain Isaac Miller's testimony in his motion for relief from judgment.  The trial court never squarely ruled on the claim, nor did the Michigan appellate courts.  This Court's review of the claim is, therefore, *de novo*.  *Robinson v. Howes*, 663 F.3d 819, 822-23 (6th Cir. 2011).

---

[10] David Kuzma's recollection of the events of that morning has improved with the passing of the years.  He signed an affidavit dated December 21, 2015, reporting that he was present on the morning of August 7, 2010, and that he heard Petitioner inform the victim and his mother that Petitioner was HIV positive.  (Aff. of David Kuzma, ECF No. 15-1, PageID.223.)

[11] Mr. Flowers was already aware that Petitioner was a convicted sex offender; however, the story Petitioner told Mr. Flowers was that Petitioner, at the age of 18, slept with an underage girl and her mother pressed charges.  (Trial Tr. III, ECF No. 24-8, PageId.920.)  The truth, however, was that Petitioner molested a small boy.  (*Id.*, PageID.897-904.)

"When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.  That is the case here.

Setting aside whether counsel failed to investigate Mr. Miller's testimony, whether he investigated but failed to present that testimony, whether counsel's inaction, if any, was professionally unreasonable, whether Mr. Miller would have testified at Petitioner's trial consistently with his affidavit's averments, and whether Mr. Miller's testimony would have been credible, the Court concludes that the failure to present that testimony was not prejudicial because the trial court would have excluded it as hearsay.

Regarding the HIV positive disclosure, Mr. Miller would not have been permitted to testify as to what Petitioner said at the August 7, 2010, meeting because it would be hearsay.  The trial court faced the same situation when Matt Flowers testified.  Petitioner's counsel sought to introduce through Mr. Flowers that Petitioner had told the victim and his mother that Petitioner was a convicted sex offender.  (Trial Tr. III, ECF No. 24-8, PageID.912-913.)  The court initially sustained a hearsay objection over Petitioner's counsel's claim that it should be admitted as the statement of a party-opponent.  The court concluded that Petitioner was not a party-opponent when his own counsel was eliciting testimony regarding Petitioner's out-of-court statements.  Petitioner's counsel persisted and was able to overcome a second objection by presenting the testimony as impeachment of the victim's mother who denied such a disclosure.  That path to admission would not have been available regarding the HIV disclosure, however, because neither

the victim nor his mother denied an HIV disclosure.  Accordingly, the Court concludes that Petitioner's HIV positive disclosure could not have come in through the testimony of Isaac Miller.

With respect to the victim's threat, Mr. Miller would not have been permitted to testify as to what the victim said on August 9, 2010, regarding the victim's intention to file a false rape charge against Petitioner.  Petitioner suggests otherwise.  He contends that under the authority of *People v. Craige*, No. 321233, 2015 WL 4604648 (Mich. Ct. App. Jul. 30, 2015), the testimony would have been admissible.[12]

In *Craige*, the Michigan Court of Appeals considered whether a witness's testimony regarding the victim's threat that she was "going to get" the defendant might be admissible.  The *Craige* court did not conclusively rule on the issue.  It noted that "at first blush this statement would seem to be hearsay . . .."  *Craige*, 2015 WL 4604648, at *6.  Yet, the court also posited that the statement might be admissible "as a statement of [the declarant's] then-existing state of mind" under Michigan Rule of Evidence 803(3).  *Id.*

It is noteworthy that the *Craige* court's decision did not result in a reversal of his conviction, it only earned him a *Ginther*[13] hearing.  At that hearing, the trial court found Craige's counsel to be more credible than Craige, so Craige ultimately lost his appeal.  *See People v. Craige*, No. 333018, 2017 WL 3043802 (Mich. Ct. App. Jul. 18, 2017), *leave to appeal denied*, 907 N.W.2d 563 (Mich. 2018); *see also Craige v. Burt*, No. 2:18-cv-12154, 2019 WL 4511651 (E.D.

---

[12] In the state trial court, the court of appeals and the supreme court, Petitioner presented the *Craige* case as the only support for the admissibility of Miller's (and David Kuzma's) testimony regarding the victim's threats.  (Pet'r's Mot. for Relief from J., ECF No. 24-13, PageID.1143; Pet'r's Appl. for Leave to Appeal in the Mich. Ct. App., ECF No. 24-22, PageID.1624; Pet'r's Appl. for Leave to Appeal in the Mich. Supreme Ct., ECF No. 24-23, PageID.1782.)  The Court will limit its analysis to that claim and will not address other possible bases for admission of that testimony.

[13] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

Mich. Sept. 19, 2019) (denying habeas petition).  The court's ruling that such testimony might be admissible is hardly a definitive statement of Michigan law.  Nonetheless, this Court can be confident the trial court would have rejected the "state of mind" exception to the hearsay rule with regard to Mr. Miller's proposed testimony because the trial court did exactly that with regard to Petitioner's testimony.

Petitioner's counsel sought to elicit testimony from Petitioner regarding the victim's threat communicated by instant message.  (Trial Tr. IV, ECF No. 24-9, PageID.1003-1004.)  When the prosecutor posed a hearsay objection, Petitioner's counsel responded that it was not offered to show the truth of the matter asserted, but to show his then existing state of mind—"that James was upset and angry"—the same argument made in *Craige*.  (*Id.*, PageID.1003.)  The court sustained the objection.  Therefore, the Court concludes that it would have made no difference if Mr. Miller were waiting in the hallway, fully prepared by counsel, to testify at Petitioner's trial because the key testimony Petitioner claims Miller could have provided would never have been admitted. Petitioner has failed to demonstrate that counsel's failure to investigate and present Mr. Miller's testimony would has prejudiced him; therefore, he is not entitled to habeas relief on this ineffective assistance of counsel claim.

**D.    Cumulative effect of counsel's errors**

Finally, Petitioner contends that the cumulative impact of counsel's errors demonstrates ineffective assistance.  For the reasons set forth above, however, the Court concludes that there were either no errors, or that the errors did not prejudice Petitioner.  To the extent a collection of insufficient prejudices might possibly accumulate to constitutionally sufficient prejudice, the Court concludes that such an accumulation did not occur in Petitioner's case.  Considering all the errors identified above, the Court concludes that they did not collectively have an impact on the reliability of the outcome.

41

## VI.    Appellate counsel

Petitioner contends that his appellate counsel rendered ineffective assistance for failing to raise the issues above—to the extent they were, in fact, not raised in Petitioner's direct appeal.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  For the reasons set forth above, the issues which Petitioner complains that appellate counsel failed to raise lack merit.  Accordingly, Petitioner has failed to show that counsel was professionally unreasonable for choosing to forego them or that Petitioner suffered any prejudice as a result.

## VII.   Petitioner's motion to stay (ECF No. 36)

Petitioner has moved the Court to stay his habeas proceedings to permit him to exhaust an

additional claim in the state courts based on "newly discovered" evidence.  Petitioner states:

> Newly discovered evidence of constitutional magnitude has come to Petitioner's
> attention on November 6, 2019 that leads the Petitioner to believe that it is in his
> best interest to present an additional claim of Prosecutorial misconduct in the
> violation of a Due Process in the known use of false testimony to the trial court by
> way of a Motion For Relief [from Judgment] pursuant to MCR 6.502(G)(2) prior
> to this Court's final ruling on his habeas Corpus.
>
> On November 6, 2019, Petitioner retained private detective Thomas M. Williams,
> CLI, CFE of Traverse City, Michigan (231) 941-2226, a Board Certified Legal
> Investigator, a Board certified Fraud Examiner and a Michigan Licensed
> Professional Investigator to investigate and interview Scott Edward Mihelsic, a jail-
> house informant and witness for prosecution in Petitioner's case who[] provided
> damaging testimony for prosecution and is believed to have committed perjury at
> the direction of prosecutor, David Lee Hunter.
>
> During Mr. Williams['s] interview of Mr. Mihelsic, it was ascertained and digitally
> recorded and transcribed that Mr. Mihelsic provided false testimony to the jury of
> not being remuneration [sic] for his testimony in the form of a plea bargain in which
> Mr. Mihelsic falsely testified he was not remunerated by prosecution in exchange
> for his testimony against Petitioner at the direction of prosecutor, David Lee
> Hunter.
>
> Mr. Mihelsic further has stated the prosecutor David Lee Hunter threatened and
> coerced him into providing false testimonial evidence against Petitioner.
>
> During closing statements at Petitioner['s] trial, prosecutor, David Lee Hunter
> relied on Mr. Mihelsic's false testimony by reiterating Mr. Mihelsic['s] testimony
> that "he was not given a thing" . . . "Not one thing for his testimony."

(Pet'r's Mot. for Stay, ECF No. 36, PageID.2015-2016) (paragraph numbers omitted).  Petitioner

has not supplied any documents to support his claims.  On the strength of Mihelsic's recantation,

Petitioner has moved for relief from judgment in the trial court.  Petitioner's motion as denied on

October 27, 2020.[14]  Petitioner has applied for leave to appeal that denial to the Michigan Court of Appeals.  *Id.*

Petitioner has not formally added this claim to his petition by way of amendment.  Once added, the petition will be "mixed" because Petitioner has some claims that are exhausted and one that is not.  Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies.  However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review.  This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition.  As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions.  *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002).  In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court.  *Id.*; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

The Supreme Court has held, however, that the type of stay-and-abeyance procedure set forth in *Palmer* should be available only in limited circumstances because over-expansive use of the procedure would thwart the AEDPA's goals of achieving finality and encouraging petitioners

---

[14] *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=355510&CourtType_CaseNumber=2 (visited November 24, 2020).

to first exhaust all of their claims in the state courts.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).  In its discretion, a district court contemplating stay and abeyance should stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless," and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 278. Moreover, under *Rhines*, if the district court determines that a stay is inappropriate, it must allow the petitioner the opportunity to delete the unexhausted claims from his petition, especially in circumstances in which dismissal of the entire petition without prejudice would "unreasonably impair the petitioner's right to obtain federal relief." *Id.*

The undersigned concludes that Petitioner's unexhausted claim of prosecutorial misconduct is "plainly meritless" because it is too late.  Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1).  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on September 29, 2014**.**  Based on the record, it does not appear that Petitioner sought certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under Section 2244(d)(1)(A).  *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on December 28, 2014.  Accordingly, absent tolling, Petitioner would have one year, until December 28, 2015**,** in which to file his habeas petition.  The

Court received Petitioner's initial unsigned petition on November 2, 2015,[15] with about two months remaining before the period of limitation expired.

The running of the statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the state supreme court. *Lawrence v. Florida*, 549 U.S. 327 (2007). The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United States Supreme Court. *Id.* at 332.

Petitioner filed his first motion for relief from judgment on February 24, 2016.[16] (Mot. for Relief from J., ECF No. 24-13, PageID.1126.) By that date, the period of limitation would have already expired with respect to issues not raised in the petition. The Michigan Supreme Court denied leave to appeal by order entered November 7, 2018, and thereby ended the period of tolling. Almost two years passed before Petitioner raised his new claim of prosecutorial misconduct. If the timeliness of Petitioner's new claim is measured based on the period of limitation "start" date provided by 28 U.S.C. § 2244(d)(1)(A), the claim is raised too late.

Section 2244(d)(1) provides other possible start dates for the period of limitation, including the following:

> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[15] The petition is not dated. Nonetheless, Petitioner reports that he "filed his Petition . . . on November 2015." (Pet'r's Mot. to Stay, ECF No. 8, PageID.57.)

[16] Petitioner pursued a second motion for relief from judgment in the state courts at the same time he pursued his first motion. The tolling period for the second motion, however, does not extend beyond the period of tolling attributable to Petitioner's first motion for relief from judgment.

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Petitioner does not contend that the state impeded the raising of this issue and that the removal of the impediment permitted him to raise it now.  Petitioner does not contend that his new claim depends on a constitutional right recently recognized and made retroactively applicable.  Instead, by arguing that his new claim is based on "newly discovered evidence," Petitioner is apparently relying on the "start" date provided by § 2244(d)(1)(D), the factual predicate could not have been discovered through the exercise of due diligence until the date that Petitioner "discovered" it: November 6, 2019.

Under Section 2244(d)(1)(D), the time under the limitations period begins to run when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts.  *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).  "The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004).  Section 2244(d)(1)(D) "does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim. *Id.* (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294-95 (E.D.N.Y. 1999))." *Id.*  "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits."

*Redmond*, 295 F. Supp. 2d at 772 (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001), and *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998)). Furthermore, a habeas petitioner has the burden of proof in establishing that he exercised due diligence in searching for the factual predicate of the habeas claims. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir. 2002). Unsupported and conclusory arguments are insufficient to warrant application of Section 2244(d)(1)(D). *Redmond*, 295 F. Supp. 2d at 772; *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750-51 (E.D. Mich. 2002) (holding that a petitioner does not show how the factual predicate could not have been discovered earlier if he fails to indicate the steps he took to discover the claims). The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue." *United States v. Turns*, 198 F.3d 584, 587 (6th Cir. 2000).

Petitioner raised this claim for the first time in this Court on November 2, 2020, when he signed his motion and placed it in the prison mailbox. For the claim to be timely, therefore, Petitioner would have to show that a duly diligent person would not have discovered the factual predicate for this claim before November 2, 2019. *Owens v. Rewerts*, No. 20-1356, 2020 WL 6286308, at *1 (6th Cir. Aug. 6, 2020) ("In deciding whether the requirements of this provision were met, the court determines when a duly diligent person in the petitioner's circumstances should have discovered the claim's factual predicate."); *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) ("We look at 'when a duly diligent person in petitioner's circumstances would have discovered' the factual predicate for his claim.") (quoting *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). Petitioner cannot make that showing. Petitioner's initial petition filed five years ago focuses on Mihelsic's testimony and his propensity to lie as demonstrated by his criminal convictions and the police reports. Petitioner specifically quotes Mihelsic's testimony that he

48

received nothing for the testimony he provided, but that he testified because he thought it was the right thing to do.  (Pet'r's Br., ECF No. 2, PageID.20.)

Moreover, Petitioner does not suggest that Mihelsic was anything but forthcoming when he was approached by the investigator four years later.  Petitioner does not claim that there was any barrier to obtaining this information prior to November 2, 2019.  Petitioner, despite recognizing the importance of the information, simply did not seek it.  The undersigned concludes that Petitioner has not shown that a duly diligent person would not have discovered this information prior to November 2, 2019.  Accordingly, Petitioner's claim is untimely even if the period of limitation "start" date is provided by Section 2244(d)(1)(D).

The one-year limitations period applicable to Section 2254 is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court.  *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009).  A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence v. Florida*, 549 U.S. 327, 335 (2007); *Hall*, 662 F.3d at 750; *Akrawi*, 572 F.3d at 260.

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case.  The fact that Petitioner is untrained in the law, was

49

proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling.  *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing.").

Moreover, Petitioner has failed to identify any extraordinary circumstance that prevented him from simply posing the questions to Mihelsic sooner.  Petitioner has proven himself adept at pressing his claims with the assistance of attorneys and investigators since his convictions.  He offers no explanation as to why he waited seven and one-half years to pursue this claim.  He has provided no basis for the Court to conclude that he has been exercising his rights diligently with regard to this prosecutorial misconduct claim.  Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383, 391-393 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin*, 569 U.S. at 395 (quoting *Schlup*, 513 U.S. at 329 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable

diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

In the instant case, although Petitioner may baldly claim that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable jury would have convicted him.  *Schlup*, 513 U.S. at 329.  At best, Petitioner has provided evidence that Mihelsic lied about the consideration provided to him for testifying. That calls into question Mihelsic's credibility, but Mihelsic was not the only testimony—or even the principal testimony—implicating Petitioner in the crimes of which he was convicted.  Because Petitioner has wholly failed to provide evidence of his actual innocence, he is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).

Given that Petitioner's new prosecutorial misconduct claim is untimely no matter how one measures the period of limitation, the claim is plainly meritless, and a stay is not warranted.  The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds.  *See Day,* 547 U.S. at 210. The denial of a stay is certainly not a dismissal on statute of limitations grounds; nonetheless, this report and recommendation will serve as notice that the District Court has concluded the new prosecutorial misconduct claim is plainly meritless and that a stay is not warranted.  The opportunity to file objections to this report and recommendation constitutes Petitioner's opportunity to be heard by the District Judge on those issues.

### **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability as to all claims.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that Petitioner's motion for stay (ECF No. 36) be denied, and I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    December 7, 2020                    /s/ Sally J. Berens
                                              Sally J. Berens
                                              United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).